## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| _____ ) | | |
| JASON ALLEN JAMES, aka "JJ", ) | | |
| LEON NORRIS, and KEVIN STOGNER ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | No. _____ |
| v. ) | | |
| ) | | |
| TANGIPAHOA PARISH, LOUISIANA, ) | | |
| ) | | |
| Defendant. ) | | |
| _____ ) | | |

## **COMPLAINT**

## I.  **INTRODUCTION.**

Plaintiffs are three persons in recovery who live in a sober home in Tangipahoa Parish, Louisiana.  Tangipahoa Parish denied their reasonable accommodation request and consequently seeks to close down the sober home and evict Plaintiffs based on an erroneous interpretation of local law and an insistence that the sober home meet permit requirements that are so onerous and cost prohibitive that they would cause the home to shut down.

The root of the dispute involves the insistence of Tangipahoa Parish ("Parish") that the sober home should be subject to the permitting regime applicable to an "addictive disorder treatment facility" or a "Halfway House".  To obtain such a permit the Parish requires the home to provide one on site supervisory personnel for 24 hour a day, provide residents "regular access to health care providers", that it maintain general liability insurance in the minimum amount of

$1,000,000.00 per incident and $5,000,000.00 in aggregate coverage;  that it shall construct the physical structures housing its occupants "in the center of the property where it is located"; that it allow it to be be "inspected and approved by the parish sanitarian"; and that it shall make the home "fully handicapped accessible" regardless whether residents have physical disabilities that require use of a wheelchair *See infra* ¶ 36. Meeting these requirements is impossible and would force the house to close down and put the residents out on the street where they risk homelessness, jail, relapse and death.

The permit requirements are found in Chapter 26 Article IX Section 26-296 of the Tangipahoa Code of Ordinances ("Ordinance").  Because the sober home does not fit the definitions within the Ordinance, Plaintiff seeks to enjoin the Parish's application of the Ordinance to the home.  The ordinance defines an "Addictive Disorder Treatment Facility" as a "residential type facility or institution to rehabilitate persons diagnosed as being addicted to and being treated for the compulsive use of habit-forming drugs, specifically including, but not limited to medication and/or illegal drugs." *Id*. at § 26-298. The Ordinance defines a "halfway house" as "a residential type facility or institution designed to rehabilitate persons who have left a hospital or prison." *Id*. The home does not provide rehabilitative services nor does it administer medical treatment. Residents reside in the home as normal residents of a single-family home do and are subject only to randomized drug screenings to maintain their sobriety.

The Plaintiffs reside in a single-family dwelling located at 42695 Robinwood Drive in Hammond, Louisiana, which operates as a sober living home. The home provides safe and affordable housing for individuals in recovery from substance abuse and/or alcoholism. The residents reside in a supportive community environment along with other individuals managing their sobriety. All residents are required to take an initial drug screening before they are

permitted to live in the home and then required to take random and ongoing drug screenings throughout their residency, and must continue to test negative to reside in the home. The home does not provide medical services, behavioral health treatment, or administer medication to residents. The residents do not engage in group or individual therapy sessions in the home. Residents reside in the single-family dwelling as ordinary tenants would and share all household responsibilities.

The Plaintiffs also seek declaratory, temporary, and permanent injunctive relief to enjoin the Defendants' conduct, as well as monetary damages, costs, and attorneys' fees for litigating this action.

## II.    JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. §§ 3613 and 12133.

2.    Declaratory and injunctive relief is sought pursuant to 42 U.S.C. § 3613(c)(1) and 42 U.S.C. § 12133, as well as Rules 57 and 65 of the Federal Rules of Civil Procedure.

3.    Venue is proper in the United States District Court for the Eastern District of Louisiana as all acts complained of occurred within this District. *See* 28 U.S.C. § 1391(b)(2).

## III.            PARTIES

4.    Plaintiff, Jason James, aka "J.J." is a current resident of the True Freedom sober living home, located at 42695 Robinwood Drive, Hammond, Louisiana.  Mr. James is a person in recovery from drug or alcohol addiction who has resided at the home for several months.  He is 40 years old.

5.    Plaintiff, Leon Norris, is a current resident of the True Freedom sober

living home, located at 42695 Robinwood Drive, Hammond, Louisiana.  Mr. Norris is a

person in recovery from drug or alcohol addiction who has resided at the home for

several months.  He is 38 years old.

6.      Plaintiff, Kevin Stogner, is a current resident of the True Freedom sober

living home, located at 42695 Robinwood Drive, Hammond, Louisiana.  Mr. Stogner is

a person in recovery from drug or alcohol addiction who has resided at the home for

several months.  He is 28 years old.

7.      As persons recovering from drug or alcohol addiction, all Plaintiffs are

considered to have a disability according to the Fair Housing Act and Americans with

Disabilities Act. 42 U.S.C. §§ 3602(h); 12102(1), (2)(A).

8.      In order to live a productive life, they must live in a sober home for

recovering persons.  For each of them, their disability impairs the major life functions of

caring for oneself, concentrating, thinking, communicating and working. 42 U.S.C. §

12102(2)(A); 28 C.F.R. 35.108(c)(1)(i).

9.      The sober living home, located at 42695 Robinwood Drive, Hammond,

Louisiana is a 'dwelling' according to the Fair Housing Act. 42 U.S.C. § 3602(b).

10.     Defendant, Tangipahoa Parish, is the recipient of federal funding and a

"public entity," as defined by the ADA and the FHA. *See* 42 U.S.C. § 12131(1).

Tangipahoa Parish is located within the Eastern District of Louisiana.

## IV.            STATUTORY AND REGULATORY FRAMEWORK

11.     In 1988, Congress amended the Fair Housing Act, 42 U.S.C. § 3601 *et*

*seq*., to extend the guarantee of fair housing to handicapped individuals. Congress also

authorized the Secretary of the United States Department of Housing and Urban

Development to promulgate regulations to implement the Fair Housing Act. 42 U.S.C. § 3614(a).

12.     Under the Fair Housing Act, the term "handicap" means, with respect to a person, a "physical or mental impairment which substantially limits one or more of such person's major life activities, a record of such impairment, or being regarded as having such impairment." 42 U.S.C. § 3602(h). The term "physical or mental impairment" includes "alcoholism" and "drug addiction (other than addiction caused by current, illegal use of a controlled substance.)" 24 C.F.R. § 100.201.

13.     Under the Fair Housing Act, it is unlawful to discriminate against or otherwise make unavailable or deny a dwelling to any buyer or renter because of a handicap of that buyer, renter, or person residing in or intending to reside in that dwelling after it is sold, rented, or made unavailable. 42 U.S.C. § 3604(f)(1).

14.     The Fair Housing Act further provides that it is unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of the handicap of that person or persons residing in or intending to reside in that dwelling after it is sold, rented, or made unavailable. 42 U.S.C. § 3604(f)(2).

15.     The federal regulations implementing the Fair Housing Act further make it unlawful, because of handicap, "to restrict or attempt to restrict the choices of a person by word or conduct in connection with seeking, negotiating for, buying or renting a dwelling so as to… discourage or obstruct choices in a community, neighborhood or development." 24 C.F.R. § 100.70(a).

16.     The American with Disabilities Act requires that no qualified individual

with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, program, or activities of a public entity, or be subject to discrimination by any such entity. 42 U.S.C. § 12132.

17.     The federal regulations implementing the American with Disabilities Act prohibit a public entity from administering a licensing program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability, nor may a public entity establish requirements for the programs or activities of licensees that subject qualified individuals to discrimination on the basis of disability. 28 C.F.R. § 35.130(6).

18.     The federal regulations implementing the Americans with Disabilities Act also make it unlawful for a public entity, in determining the site or location of a facility, to make selections that have the purpose or effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination. 28 C.F.R. § 35.130(4)(I).

**V.          STATEMENT OF FACTS**

**A.     TRUE FREEDOM, INC. CONCEPT**

19.     Amanda Warner is the owner of 42695 Robinwood Drive in Hammond, Louisiana. The property is 2,922 square feet, 2,148 of which is living space. After purchasing the home, Ms. Warner rented the home to Mark and Melissa Robertson ("Robertsons"). The Robertsons own and operate True Freedom, which provides safe and sober housing to a maximum of ten (10) tenants in recovery from substance abuse and/or alcoholism.

20.     True Freedom provides a cost-effective means of providing a disciplined, supportive long-term alcohol and drug-free environment for individuals in recovery.

6

21.     42695 Robinwood Drive is currently being used as a sober living home by True Freedom and is in a single-family zoning district within the City of Hammond.

22.     The residents of True Freedom have access to the entire home and live in the house as any other group of unrelated persons functioning as a single housekeeping unit. The residents share all household responsibilities. The residents live together purposefully to create a family atmosphere, where residents all share the responsibilities of domestic life.

23.     True Freedom does not employ paid staff, administer psychiatric counseling, offer behavioral health treatment to its residents, or any other related behavioral health treatment.

24.     True Freedom has a house leader, who operates in the "head of household" function, like that of a one- and two-family dwelling. The head of household provides support to other residents in recovery and administers random and ongoing drug screenings to ensure the sobriety of all residents. This house leader is not medical professional, they are simply a designated resident of the home.

25.     True Freedom is not a halfway house, addictive disorder treatment facility, a juvenile detention facility, nor a live- in mental health facility. True Freedom does not administer treatment or rehabilitative services. True Freedom is not licensed by the State of Louisiana, nor does the State require it to be licensed.

26.     The language of the Parish's Code of Ordinances exempts the home from its coverage. The ordinance defines an Addictive Disorder Treatment Facility as a "residential type facility or institution to rehabilitate persons diagnosed as being addicted to and being treated for the compulsive use of habit-forming drugs, specifically

7

including, but not limited to medication and/or illegal drugs." Tangipahoa Parish Code of Ordinances, Chapter 26 Article IX, Section 26-296. True Freedom does not provide rehabilitative services nor does it administer medical treatment. Residents reside in the home as normal residents of a single-family home do and are subject only to randomized drug screenings to maintain their sobriety.

27.     True Freedom is neither a rooming nor boarding house. The residents of True Freedom rent the entire premises rather than a single room.

28.     Residents of True Freedom pay rent as ordinary tenants would. The residents of the house share all household responsibilities, including financial responsibility for rent and utilities, which they pay out of a single household checking account.

29.     The residents of True Freedom share in the cooking, shopping, cleaning, and upkeep of the premises.

30.     True Freedom's is not governed by a third party. The residents in recovery are responsible for all household expenses, including rent, utilities, and basic household supplies. Tenants make equal payments, regardless of the size of the room, since each resident is leasing the entire house, not just a room. The tenants pay the landlord one monthly check for rent, which satisfies the rent for the entire house. Finally, if there is a vacancy, the residents decide whether to fill it, and if so, the identity of the new resident.

31.     Residents of True Freedom may reside in the house indefinitely if they do not use drugs or alcohol, pay their rent on time, and do not engage in disruptive behavior.

32.     The residents of True Freedom are the functional equivalent of a family for several reasons. First, each resident has access to the entire house. Second, all the residents participate equally in the housekeeping functions of the house, including household chores and finances. Yet, the most distinguishing feature is the quality of the relationship among the residents.

33.     True Freedom provides an environment for emotional and mutual support and bonding to recovering substance abusers.  This support is functionally equivalent to the quality of love and support received in a traditional family residing in a single-family home. Finally, the living arrangement does not generate profit.  It is necessary that True Freedom be able to have a minimum of eight (8) residents for the residents to ameliorate the effects of the diseases of alcoholism and drug addiction. It has been found that individuals who decide to live in programs such as that offered by True Freedom, are allowed to engage in the process of recovery from alcoholism and substance abuse, at their own pace. By living with other persons who are in recovery, the residents should never have to face a recovering alcoholic's or addict's deadliest enemy : loneliness and isolation.

34.     In addition, residents of True Freedom reside in the sober living home by choice. This choice is usually motivated by the individual's desire not to relapse into drug and/or alcohol use against after that individual has "bottomed out," i.e., lost jobs, home, or family. It is also motivated by the desire that one must change their lifestyle, the way they conduct their affairs, and the need to become a responsible, productive member of society.

**B.     THE PARISH'S ACTIONS.**

35.     On June 15, 2022, Brad Cascio, counsel for the Parish, issued a letter to the Robertsons informing them that the Parish was aware that they were "operating a sober living home" without a proper permit. Mr. Cascio directed the Robertsons to immediately cease operation until the parish approved of the "proper permits."

36.     According to the Ordinance, acquiring such a permit would entails several burdensome provisions:

(a) Facilities requiring a permit under this article shall provide supervisory personnel on a 24-hour basis. These supervisory personnel shall consist of one live-in/full-time supervisor for a facility housing one to 20 persons; two live-in/full-time supervisors for a facility housing 21 to 40 persons; three live-in/full-time supervisors for a facility housing 41 to 60 persons; and one additional supervisor who lives at the facility and works there as his full-time occupation for each additional person, up to 20 persons housed at the facility after60. All such supervisors shall have clean criminal records. No supervisor shall have ever been convicted of a felony grade offense in any jurisdiction. An average of one or more full-time live-in staff person/supervisor shall be on staff for each 20 persons housed at the facility.

(b) Facilities requiring a permit under this article shall provide its residents, patients and/or occupants with regular access to health care providers.

(c) Facilities requiring a permit under this article shall be fully handicapped accessible and shall comply with all federal and state requirements for equal access to the handicapped.

(d) Facilities requiring a permit under this article shall be inspected and approved by the state fire marshal prior to opening and on a regular basis thereafter.

(e) Facilities requiring a permit under this article shall be maintained in a clean and sanitary condition and shall be inspected and approved by the parish sanitarian or an assistant sanitarian as the representative of the state department of health and hospitals, department of public health, prior to opening and on a regular basis thereafter.

(f) No facility requiring a permit under this article shall be constructed in a federally designated flood zone without first obtaining the approval of the United States Corps of Engineers.

(g) The owner and any operator of a facility requiring a permit under this article shall at all times maintain general liability insurance coverage with an insurance company licensed to do and doing business within the state in the minimum amount of $1,000,000.00perincident and $5,000,000.00 in aggregate coverage.

10

(h) The owner and any operator of a facility requiring a permit under this article having facilities capable of housing 20 or more persons under his care must provide a security fence around the facility. This fence shall consist of chain-link construction at least eight feet in height, shall be completely lighted and shall have a open security zone of 100 feet on each side of the fencing. No shrubs, trees, obstructions or impediments to vision shall be located within this security zone. Lighting for the security fence and the security zone must be provided from dusk until dawn.

(i) The owner and any operator of a facility requiring a permit under this article having facilities capable of housing 20 or more persons under his care shall provide 24-hoursecurity guard services for the facility.

(j) If the facility houses any persons convicted of sex offenses or violent crimes such as murder, attempted murder, manslaughter or armed robbery, a sign shall be posted at each entrance to the facility on at least a four-foot by six-foot surface with four-inch lettering so as to notify and inform the public of this fact. This signage shall be in addition to any other signage required under state or federal law.

(k) The owner and any operator of a facility requiring a permit under this article shall maintain his facility in such a manner as to curtail any criminal activity by the persons housed at the facility.

(l) The owner and any operator of a facility requiring a permit under this article shall construct the physical structures housing its occupants in the center of the property where it is located.

37.    On or around June 30, 2022, Ms. Warner contacted the Tangipahoa Parish Government Planning Department ("Planning Department") to request information on obtaining the proper permit for True Freedom.

38.    On July 7, 2022, Tracy Schillache, of the Planning Department stated she: " think[s] they want you to go through the TRC (technical review committee) then PC (Planning Commission).

39.    Ms. Schillache also reported the Planning Department would issue the "proper application to fill out and get this process started."

40.    On July 11, 2022, Katy Earnest, Planning Technician of the Tangipahoa

Parish Government Planning Department directed Ms. Warner to complete a "commercial development application" and to email a copy of the application to begin the permit review process.

41.     On July 12, 2022, Ms. Warner submitted a completed commercial development application to the Tangipahoa Parish Planning Department.

42.     On July 13, 2022, Plaintiffs' Counsel reiterated to Mr. Cascio by phone that the Tangipahoa Parish Code of Ordinances did not apply to True Freedom Inc. Mr. Cascio agreed that the addictive disorder treatment facility ordinance likely did not apply and explained that True Freedom would simply be required to complete a commercial business permit application and then go before the planning commission for final approval.

43.     Without further communication or warning, the Defendant filed a filed a state court suit on August 16, 2022, against True Freedom and Warner and sought to enjoin the operation of the home and to enforce the Tangipahoa Parish Code of Ordinances.

### C.     THE REASONABLE ACCOMODATION REQUESTS

44.     On September 15, 2022, Plaintiffs submitted a reasonable accommodation request to the Parish. Mr. Cascio then advised that the Parish was unable to waive requirements on behalf of the Office of State Fire Marshall ("OSFM") and that plaintiffs would be required submit a separate reasonable accommodation from the Office of State Fire Marshal ("OSFM").

45.     On October 17, 2022, Plaintiffs submitted a reasonable accommodation request to the OSFM pursuant to the federal Fair Housing Act, 42 U.S.C. §

3604(f)(3)(B), requesting a waiver of the limitations of the maximum number of unrelated persons who can reside together as a family under the National Fire Protection Association's ("NFPA") life safety code ("LSC") as adopted by the State of Louisiana.

46.     Specifically, Plaintiffs requested that the OSFM treat the use of 42695 Robinwood as a single-family dwelling, rather than as a facility requiring additional inspection and fire marshal specifications. Plaintiffs submitted information on True Freedom's operation, including information about the home's familial environment and that the home does not operate as a commercial enterprise. Plaintiffs further provided that True Freedom's residents could respond to any fire emergencies in the same manner as individuals residing in a home who are related by blood or marriage.   Finally, Plaintiffs requested a waiver from the LSC requirement.

47.     On October 20, 2022, the OSFM granted the reasonable accommodation request.  Joe Delaune, Chief Architect, for the Louisiana State Fire Marshal, explained that the OSFM determined that the residence located at 42695 Robinwood Drive "falls under the occupancy classification of Lodging and Rooming House as defined by NFPA 101, Life Safety Code, edition 2015, as adopted by the OSF."  Mr. Delaune provided: "[g]enerally, a Lodging and Rooming House will have defined and required life safety feature requirements for its occupants."

48.     The OSFM determined that 42695 Robinwood Drive is "entitled to the accommodation as requested and that request is reasonable."  The OSFM explained further that it "will allow the unrelated occupants of the referenced structure having the disabilities documented to reside together as the functional equivalent of a family for the purpose of applying the Life Safety Code and consider the structure to remain classified

13

as a one- or two-family dwelling for the purpose of applying the state laws, rules and codes that are applicable to one- or two-family dwellings as defined by LRS 40:1573. The OSFM further accepts the proposed safety measures that will provide some level of safety for the occupants set forth by True Freedom. As a result of this determination, it concluded that True Freedom's sober home will be designated as a one- and two-family dwelling."

### D.      THE PARISH COUNCIL MEETING

49.      On October 24, 2022, the Tangipahoa Parish Council convened a meeting to consider whether they would approve or deny True Freedom's reasonable accommodation request to waive the remainder of the requirements for Addictive Disorder Treatment Facilities under Tangipahoa Parish Code.

50.      Plaintiffs explained on the record that the Addictive Disorder Treatment Facility  did not apply and that alternatively, Plaintiffs would be entitled to a reasonable accommodation under the Fair Housing Act.

51.      The Parish Council's remarks on the record indicate their use of pretextual and stereotypical statements about individuals with disabilities to justify the denial of Plaintiffs' valid reasonable accommodation request.

52.      The Fair Housing Act prohibits the use of stereotypical assumptions about individuals with disabilities to justify the denial of a valid reasonable accommodation request. *See Bangerter v. Orem City Corp*., 46 F. 3d 1491, 1503-04 (10 Cir. 1995) (finding that the federal fair housing act prohibits the use of "blanket stereotypes about disabled persons rather than particularized concerns about individual residents.") *See also*, *Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300

14

F.3d 775, 786 (7th Cir. 2002). During the meeting council members made the following remarks:

    a.   "…you act like you're just trying to circumvent everything by hiding behind the Disabilities Act… if these people [the True Freedom, Inc. residents] are really truly trying to clean up their act, they shouldn't have any problem with letting the neighbors know what they are…" (Audio tape: Recording of Tangipahoa Parish Council Meeting: at 28:34).

    b.   One councilmember stated that they would not waive the million-dollar insurance requirement for True Freedom, Inc., and stated that "there needs to be a fence around the whole place…," referring to 42695 Robinwood Drive, and demanded that "…all the bushes should have been removed so the neighbors can see what's going on over there." (Audio tape: Recording of Tangipahoa Parish Council Meeting: at 35:43).

    c.   One councilmember asked: "why is there car after car after car after car going to this house?" in reference to 42695 Robinwood Drive, and demanded to know "what's going on in the middle of the night all night long?" (Audio tape: Recording of Tangipahoa Parish Council Meeting: at 22:17).

    d.   "There's been disruption in that neighborhood," referring to the subdivision where True Freedom, Inc. is located. (Audio tape: Recording of Tangipahoa Parish Council Meeting: at 7:53).

e.  "That's troubling, for a good neighborhood of a subdivision, especially." (Audio tape: Recording of Tangipahoa Parish Council Meeting: at 9:56).

f.  "Right there is troubling because you're telling me that they're [the True Freedom, Inc. residents] not capable of making normal decisions" (Audio tape: Recording of Tangipahoa Parish Council Meeting: at 10:57).

g.  "If you're convicted of a crime we don't want you to be [in] sober living…" (Audio tape: Recording of Tangipahoa Parish Council Meeting: at 11:11). "If they [the True Freedom, Inc. residents] have a history of crime or violence, that is something that we would need to know." (Audio tape: Recording of Tangipahoa Parish Council Meeting: at 11:34).

h.  "What y'all are asking for are not reasonable accommodations, this is for the health and safety of these people in that neighborhood." (Audio tape: Recording of Tangipahoa Parish Council Meeting: at 11:38).

i.  "Is there anyone in the home [operated by True Freedom, Inc.] convicted of a crime of violence or [is] a sex offender?" (Audio tape: Recording of Tangipahoa Parish Council Meeting: at 18:36).

j.  One councilmember asked if the True Freedom's residents have jobs, thus implying that the residents should not qualify as "disabled" under the Fair Housing Act. (Audio tape: Recording of Tangipahoa Parish Council Meeting: at 21:23).

k.  "I'm just saying think of the people that live in that neighborhood, I think they have a right to know what's living next to them [in reference to the residents of True Freedom, Inc.]." (Audio tape: Recording of Tangipahoa Parish Council Meeting: at 27:42).

53.     The effect of Defendant's actions has been to prevent the Plaintiffs from residing at the dwelling of their choice or in any other home zoned for single family use in Tangipahoa Parish.

54.     The Plaintiffs are aggrieved persons as they are disabled persons or associated with disabled persons under the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3602(d) and (I) who have been injured by Defendant's discriminatory conduct and have suffered a loss of civil rights as a result of the Defendant's conduct.

55.     The house at 42695 Robinwood Drive is a dwelling within the meaning of Section 802(b) of the Fair Housing Act, 42 U.S.C. § 3602(b).

56.     The effect of the Parish's conduct is to deny needed housing opportunities to recovering alcoholics and substance abusers within Tangipahoa Parish.

57.     The effect of the Parish's conduct is to limit the housing opportunities of unrelated disabled persons by denying them the right to live together as a group in any residential zoning district within Tangipahoa Parish.

58.     The Parish is treating the residents of the aforementioned dwellings in a discriminatory fashion, and is imposing far more stringent fire, zoning, building, property maintenance and land use requirements on this group of unrelated disabled individuals living together than it imposes upon individuals living together who are related by blood or marriage or other groups of unrelated persons.

17

59.     By arbitrarily and illegally classifying the premises described as something other than a single-family use, Tangipahoa Parish is making single family housing unavailable to persons recovering from drugs and alcohol addiction who reside in a dwelling that is neither licensed by the State of Louisiana, nor provides 24-hour staffing.

60.     Tangipahoa Parish has acted under color of state law in failing to affirmatively further fair housing in its code enforcement activities, with the purpose and effect of discriminating against Plaintiffs solely because of their handicap and applying those codes to deny Plaintiffs the residential opportunities available to persons related by blood, marriage or adoption, or other groups of similarly situated disabled persons.

61.     Plaintiffs are living in fear of losing their home and are suffering considerable anxiety, emotional distress, pain, setbacks in their efforts at recovery, and other irreparable harm because of the Parish's actions. They have no adequate remedy at law, aside from granting the requested reasonable accommodation.

62.     Tangipahoa Parish has denied Plaintiffs due process of law by the arbitrary manner in which it has classified the premises occupied by the Plaintiffs as something other than a single-family use and is seeking to use its powers to force the plaintiffs from living within residential zones within the State of Louisiana.

63.     Tangipahoa Parish had utilized its enforcement powers to threaten, intimidate, harass, and coerce Plaintiffs after they have exercised their rights under the Federal Fair Housing Act.

64.     Tangipahoa Parish is intentionally and maliciously harassing, intimidating, and interfering with the Plaintiffs and persons associated with the Plaintiffs

with the intent of preventing True Freedom from existing in any neighborhood in the Tangipahoa Parish.

## CLAIMS FOR RELIEF

### COUNT I
### FAIR HOUSING ACT

65.     Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 60 above.

66.     Defendant, Tangipahoa Parish, is violating Plaintiffs' rights under the Fair Housing Act, 42 U.S.C. § 3601, *et. seq*, and its implementing regulations by:

a.   denying and otherwise making housing unavailable to the Plaintiffs because of their disability;

b.   using the Tangipahoa Code of Ordinances as a pretext to exclude the Plaintiffs because of their disability;

c.   enforcing discriminatory statutory rules and internal policies on the Plaintiffs because of their disability;

d.   interfering with the right of the Plaintiffs to live in the dwelling of their choice;

e.   failing to make reasonable accommodations in its enforcement of its rules, regulations and laws so as to afford the Plaintiffs an equal opportunity to use and enjoy the aforementioned dwelling; and,

f.   retaliating against Plaintiffs because of their exercise of their fair housing rights, by filing a claim in federal court.

### COUNT II

## AMERICANS WITH DISABILITIES ACT

67.     Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 62 above.

68.     The Plaintiffs, True Freedom, Inc., and Ms. Amanda Warner are associated with, and/or providing housing to people with disabilities as defined in 42 U.S.C. § 12102(2).

69.     Tangipahoa Parish is a public entity pursuant to 42 U.S.C. § 12131(1).

70.     The actions of the Defendant Tangipahoa Parish, to treat the use of 42695 Robinwood Drive as a lodging and/or rooming house violates the rights of the Plaintiffs under the Americans with Disabilities Act, 42 U.S.C. § 12132, *et. seq.*, and the regulations promulgated thereunder by:

      a.  denying the individual Plaintiffs who are in recovery from alcoholism and substance abuse the opportunity to participate in or benefit from the supportive housing program offered by True Freedom, Inc.

      b.  using the Tangipahoa Parish Code of Ordinances and internal policies and methods of administering this code through laws and regulations enacted by the State of Louisiana with the purpose of subjecting the Plaintiffs to discrimination on the basis of their handicap;

      c.  subjecting Plaintiffs, on the basis of their disability, to discrimination;

      d.  denying the individual residents of 42695 Robinwood Drive, those in recovery, an opportunity to participate in a program in the most integrated setting appropriate to their needs;

      e.  denying the individual Plaintiffs and people with disabilities an equal

opportunity to participate in or benefit from services and programs
equal to those of people without disabilities;

    f.   disabled persons who are not recovering alcoholics and drug addicts;

    g.   utilizing licensing and permit requirements, a requirement not imposed
upon other groups of related or unrelated non-disabled persons, to deny
Plaintiffs the enjoyment of their rights.

## COUNT III

## REHABILITATION ACT OF 1973

71.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 66
above.

72.    Tangipahoa Parish is violating Plaintiff's rights under the Rehabilitation
Act of 1973, 29 U.S.C. § 794, and its implementing regulations by:

    a.   utilizing the Tangipahoa Parish Code of Ordinance and its internal policies
and its method of administering the and its internal policies with the purpose
and effect of subjecting the Plaintiffs and the Plaintiff's residents to
discrimination solely on the basis of their handicap;

## RELIEF SOUGHT AS TO ALL COUNTS

**WHEREFORE**, Plaintiffs pray that the Court award them the following relief:

1.    Enter a temporary restraining order and/or preliminary and permanent injunctions
restraining Defendant, Tangipahoa Parish from taking actions either directly or indirectly

which would interfere in any way with Plaintiffs' current use of the dwelling located at 42695 Robinwood Drive, Hammond, Louisiana.

2. Enter a declaratory judgment that Defendant, Tangipahoa Parish, has illegally discriminated against Plaintiffs by arbitrarily and capriciously applying the Tanigpahoa Parish Code of Ordinance's Addictive Disorder Treatment Facility provision and its internal policies to the occupancy of 42695 Robinwood Drive by a group of recovering alcoholics and recovering substance abuse addicts, thereby interfering with the Plaintiffs' equal opportunity to use and enjoy a dwelling on the basis of handicap, in violation of the Fair Housing Act, the Americans with Disabilities Act, and the Rehabilitation Act of 1973;

3. Enter a temporary restraining order and/or preliminary and permanent injunctions enjoining Tangipahoa Parish, its officials, agents and successors, and all persons in active concert with or participating with any of them, from interfering with the operation of 42695 Robinwood Drive as a home for recovering alcoholics and substance abusers, and/or from interfering in any way with the rights of the Plaintiffs to reside in those premises;

4. Enter a temporary restraining order and/or preliminary and permanent injunctions enjoining Tangipahoa Parish, its officials, agents and successors, and all persons in active concert with or participating with any of them, from actively assisting the Defendant, in its efforts to interfere with the rights of recovering alcoholics or substance abusers to reside at 42695 Robinwood Drive.

5. Enter an order declaring that Plaintiffs' use of 42695 Robinwood Drive is consistent with classification of the premises as a single-family dwelling, and requiring Tangipahoa

Parish to exempt Plaintiffs' use of 42695 Robinwood Drive from the provisions of the

Life Safety Code and its internal policies in the same manner as it does to all other single-

family dwellings and to grant a reasonable accommodation by waiving the requirements

of the Act;

6. Grant an award of reasonable costs and attorney's fees; and,

7. Grant an award of compensatory and punitive damages pursuant to the Rehabilitation Act

   of 1973.

8. Order other such relief as the Court deems just and proper.

Respectfully submitted,


  /s Sarah Carthen Watson
        Sarah Carthen Watson, La. Bar No. 40098
        Jodi D. Hill, La. Bar No. 39912
        Louisiana Fair Housing Action Center
        1340 Poydras Street, Suite 710
        New Orleans, LA 70112
        scarthenwatson@lafairhousing.org
        Phone: 504-708-5291
        jhill@lafairhousing.org
        Phone: 504-766-9056



  /s John Adcock
        John Adcock, La. Bar No. 30372
        Adcock Law LLC
        3110 Canal Street
        New Orleans, LA 70119
        504-233-3125
        jnadcock@gmail.com